# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KELLY LEE PARSONS, | ) | Case No.: 5:05CV1589 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | Magistrate Judge George J. Limbert |
| vs. | ) | |
| | ) | |
| CHRISTINE MONEY, WARDEN, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |

On May 27, 2005, Kelly Lee Parsons ("Petitioner"), *pro se*, executed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. Electronic Case Filing ("ECF") Dkt. #1. On June 6, 2005, his petition was filed in this Court. *Id.* On June 9, 2005, Petitioner filed a motion for the appointment of counsel and motion for an evidentiary hearing. ECF Dkts. #4, #5. The Honorable Judge James S. Gwin thereafter transferred the case to the Sixth Circuit Court of Appeals as a second or successive petition, however the Sixth Circuit remanded the case, finding that its approval was not necessary because Petitioner was not required to seek its approval when his prior federal habeas corpus petitions were dismissed for failure to exhaust state court remedies. ECF Dkt. #7. Respondent Christine Money, Warden of the Marion Correctional Institution in Marion, Ohio ("Respondent") has filed an answer / return of writ (ECF Dkt. #10) and Petitioner has filed a traverse and additional motions for appointment of counsel and for an evidentiary hearing. ECF Dkts. #11, #12.

The undersigned recommends that the Court dismiss the instant habeas corpus petition with prejudice because the claims are non-cognizable in habeas review and / or otherwise fail on their merits.

I.      **FACTUAL BACKGROUND /  PROCEDURAL HISTORY**

       A.      **DIRECT REVIEW**

               1.      **TRIAL COURT**

On August 24, 1990, Petitioner withdrew his former not guilty pleas and entered guilty pleas to the crimes of aggravated murder and aggravated robbery. ECF Dkt. #10, Attachment 2 Exhibits A, B.  At the plea colloquy, the court informed Petitioner of the potential sentences that he faced on the charges if he went to trial and explained the sentences that Petitioner would face if he pleaded guilty to the charges. ECF Dkt. #1, Attachment 2, Exhibit 9 at 27-28.  The court explained that Petitioner faced a potential sentence of life imprisonment on the aggravated murder charge if he entered a guilty plea and he would be eligible for parole in twenty years. *Id.* at 28-29.  The court also informed Petitioner that he faced a potential sentence of ten to twenty-five years on the aggravated robbery charge, but that the prosecutor was recommending that sentence to run concurrent to the aggravated murder conviction thereby making Petitioner eligible for parole after twenty years. *Id.* The court specifically asked whether Petitioner had been promised anything, or coerced or threatened, in order to obtain the guilty pleas – to which Petitioner responded in the negative. *Id.* at 30.

The Summit County Court of Common Pleas journalized acceptance of the pleas on

-2-

August 27, 1990 and sentenced Petitioner to life imprisonment on the aggravated murder

conviction and ten to twenty-five years of imprisonment on the aggravated robbery conviction,

with both sentences running concurrently. ECF Dkt. #1, Attachment 2, Exhibit 5.


### 2.      DIRECT APPEAL

Petitioner filed a timely appeal of his conviction and sentence, challenging the

constitutionality of Ohio law regarding the bindover proceedings in juvenile court as he was

only seventeen years old when the crime was committed, and his case was bound over so that

he could be tried as an adult. ECF Dkt. #10, Attachment 2, Exhibit D.  The appellate court

affirmed the judgment of the juvenile court on March 13, 1991. *Id.*


### 3.      MOTION TO WITHDRAW GUILTY PLEAS

On November 11, 2003, Petitioner received a parole hearing at which the Ohio Adult

Parole Authority ("OAPA") denied him parole. ECF Dkt. #1, Attachment 2, Exhibit 6.  The

OAPA noted that Petitioner had already served 164 months (13.6 years) and his guideline range

was 300 months (25 years) to life.[1] *Id.*  Petitioner was granted 40 months of credit for programs

that he had participated in at prison and his next parole board hearing was scheduled for

November 2011. *Id.*

On March 29, 2004, Petitioner filed a motion to withdraw his guilty pleas in the Summit

County Court of Common Pleas. ECF Dkt. #1, Attachment 2, Exhibit 1.  Petitioner alleged in

---

[1]A "guidelines range" is a numerical value, determined by applying a risk score and offense score to a grid-system and subsequently determining a period of time for which an inmate should serve prior to being released on parole. *See* Memorandum of Opinion and Order of the Honorable Judge John R. Adams in *Parsons v. Ohio Adult Parole Authority*, U.S. District Court Northern District of Ohio, Eastern Division, Case No. 5:04CV2531 .

the motion that he wished to withdraw his guilty pleas because plea negotiation promises were not fulfilled, particularly alleged promises that he would be paroled in thirteen years and six months, he would be released at his first parole hearing and he would serve no more than fifteen years of imprisonment at most. ECF Dkt. #1, Attachment 2, Exhibit 1 at 3-4.

The trial court reviewed Petitioner's assertions and denied his motion, finding no promises had been made, and that the trial court had made clear at the plea colloquy that Petitioner could be <u>eligible</u> for parole in twenty years and never stated that he would be paroled in fifteen or twenty years. *Id.* at 4-5. "[A] review of the Plea and Sentencing indicates that there was no promise made to Defendant by the Court or other entity that he would be released on parole at any specific time at all." *Id.* Moreover, the court noted that during the plea colloquy, Petitioner answered that he had not been promised anything other than that placed on the record in exchange for his guilty pleas. *Id.* at 5.

Petitioner appealed this decision to the Ninth District Court of Appeals. ECF Dkt. #1, Attachment 2, Exhibit 2. Petitioner's sole assignment of error stated:

> "To the prejudice of [Defendant], the trial court committed plain error, abused its discretion and violated [Defendant's] due process rights and equal protection rights under state and federal laws, state and federal case law, *Layne v. Ohio Adult Parole Authority*, 97 Ohio St. 3d 456, 780 N.W.2d 548, the Fourteenth Amendment to the United States Constitution and Article One of the Ohio Constitution, when the trial court based its findings that no manifest injustice occurred in the instant case when the [Adult Parole Authority] changed the terms and conditions of the guilty plea at [Defendant's] November 10, 2003 parole eligibility hearing and dismissed [Defendant's] Crim.R. 32.1 motion."

*Id.* On January 26, 2005, the appellate court affirmed the denial of Petitioner's motion to withdraw his guilty plea. *Id*. at 6. The court noted that Petitioner had no constitutional right to parole and the imposition of new parole guidelines by the OAPA at Petitioner's parole hearing

-4-

was not a manifest injustice warranting the withdrawal of a guilty plea, particularly in light of the sentencing transcript, which "shows that Petitioner was neither promised a specific release date, nor was he told that he was definitely entitled to parole at a certain time." *Id.* at 5-6.

Petitioner thereafter filed an appeal to the Ohio Supreme Court on or about February 17, 2005 and submitted a memorandum in support of jurisdiction arguing the following propositions of law:

Proposition of Law I:  The Appellant's Guilty Plea was made Unknowingly, Unintelligently and Involuntary by the actions of the APA altering the Terms and Conditions of the Judicially Sanctioned Plea Agreement, which renders the Guilty Plea unconstitutional thereby un-enforceable.

Proposition of Law II: The Laws, which include Administrative Regulations, in force and effect at the time the Plea Agreement was Judicially Sanctioned are the Laws that must be applied to this Appellant at all times of this Appellant's Incarceration, which must be abided by the APA, who are Agents of the State.

Proposition of Law III:  The APA breached the Judicially Sanctioned Plea Agreement by violating the A.R.'s that were in force and effect at the time this Appellant Pled Guilty.

Proposition of Law IV:  The APA, as Agents of the State, is bound by the Terms and Conditions of the Judicially Sanctioned Plea Agreement Contract.

Proposition of Law V:  The APA's refusal to calculate the Appellant's Good Time and Earned Good Time Credits in the computation of Appellant's total time served created [sic] a Manifest Injustice.

Proposition of Law VI:  The APA increasing Parole Eligibility from that as mandated by State Law creates a Manifest Injustice.

Proposition of Law VII:  The APA's unconstitutional actions in Appellant's case create a Constitutional Right to allow this Appellant to Withdraw the Guilty Plea.

Proposition of Law VIII: A Crim.R. 32.1 Motion is the only proper remedy available for this Appellant to Withdraw the Guilty Plea to Correct a Manifest Injustice and the Trial Court erred and abused its discretion, after a Manifest Injustice had been demonstrated by Appellant, to conduct and [sic] Evidentiary Hearing and Withdraw the Guilty Plea to

-5-

Correct the Manifest Injustice.

Proposition of Law No. IX: It was a Direct Conflict of Interest when Judge Lynn Slaby, Presided Over, and Ruled Upon, Appellant's Appeal.

ECF Dkt. #10, Attachment 4, Exhibit G.  On May 11, 2005, the Ohio Supreme Court dismissed Petitioner's appeal as not involving any substantial constitutional question. ECF Dkt. #1, Attachment 2, Exhibit 3.

### B.      PRIOR FEDERAL HABEAS CORPUS PETITIONS

In addition to state court filings, Petitioner has pursued previous federal habeas corpus petitions; Petitioner also has a 42 U.S.C. § 1983 claim pending against the OAPA in the United States District Court for the Southern District of Ohio, Eastern Division (*Parsons v. Wilkinson*, 2006 U.S. Dist. LEXIS 54979, Case No. C2-05-527 (S.D. Ohio 2006)).

On December 23, 2003, Petitioner filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of Ohio. ECF Dkt. #1, Exhibit 4.  On June 21, 2004, that Court issued an Order overruling Petitioner's objections to a United States Magistrate Judge's Report and Recommendation finding that Petitioner had failed to exhaust his state court remedies before filing his federal habeas corpus petition. ECF Dkt. #10, Attachment 5, Exhibit I.

According to Petitioner, he filed another federal habeas corpus petition in the Southern District of Ohio on February 7, 2002, but that case was dismissed as duplicative of his prior case and Petitioner admits that he did not appeal that ruling. ECF Dkt. #1, Attachment 2, Exhibit 4.

Petitioner also has two prior federal habeas corpus petitions in this Court, the first filed

on March 18, 2004. *See* ECF Dkt. #10, Attachment 2, Exhibit J (U.S. District Court, Northern

District of Ohio, Case No. 5:04CV662).  In his sole ground for relief, Petitioner asserted that:

> Ground One:  The Ohio Administrative Adult Parole Authority [OAPA] violated
> Petitioners [sic] right to Due Process of Law, as guaranteed by the Fifth and
> Fourteenth Amendments to the United States Constitution and Article One,
> Sections One [I], Ten [X], and Eighteen [XVIII] of the Ohio Constitution.
>
> Supporting Facts: Upward departure to a higher guideline category and
> respondents [sic] decision not to correct error violates the decision of the
> Supreme Court of Ohio in *Layne v. Ohio Adult Parole Authority*, 97 Ohio St.3d
> 456, 780 N.E.2d 548, and further violates Petitioners [sic] Right to Due Process
> of Law.

*Id.*  On June 8, 2004, the Honorable Judge John R. Adams marginally granted Petitioner's

motion to dismiss his petition without prejudice so that he could exhaust his state court

remedies. ECF Dkt. #10 (U.S. District Court, Northern District of Ohio Case No. 5:04CV0662).

On December 16, 2004, Petitioner filed another federal habeas corpus petition arguing

the same ground for relief that he had presented in his previous federal habeas corpus petition

before this Court. *See* ECF Dkt. #10, Attachment 2, Exhibit K (*Parsons v. Ohio Adult Parole

Authority*, U.S. District Court, Northern District of Ohio Case No. 5:04CV2531).  On March 30,

2005, Judge Adams issued a Memorandum of Opinion and Order denying the petition on the

merits and dismissing it with prejudice. *Id.*

Judge Adams found that Petitioner's claim, alleging that the OAPA misapplied Ohio law

by placing him in an improper Offense Category for parole consideration, was not cognizable in

federal habeas corpus review. *Id.* at 7.  Further, Judge Adams found that Petitioner

misconstrued state and federal law in his argument as the minimum term of incarceration did

not determine when he would be released from prison. *Id.*  Judge Adams also held that no

federal constitutional right existed to be released from prison at the earliest parole eligibility

date or before the expiration of one's maximum sentence. *Id.*  As to good time credits, Judge

Adams found that this was primarily a state-law issue and was therefore not cognizable in

federal habeas corpus review. *Id*. at 9.

Petitioner sought reconsideration of Judge Adams' Memorandum of Opinion and Order

based on an Ohio court ruling in a class-action lawsuit against the OAPA (through which

Petitioner claimed to be a class member). *See e.g., Ankrom v. Hageman*, 2005 Ohio 1546, 2005

Ohio App. LEXIS 1480 (Ct. App. 10th Dist., Franklin Co. 2005); ECF Dkt. #10, Attachment 6,

Exhibit M.  Judge Adams then amended his Order to dismiss Petitioner's habeas petition

<u>without</u> prejudice in the event the *Ankrom* lawsuit presented a new-available remedy for which

Petitioner could exhaust in the Ohio courts.[2] *Id.* at 2.

The following day, May 11, 2005, the Ohio Supreme Court rejected Petitioner's

application for a discretionary appeal of the Ohio Ninth District Court of Appeals' decision to

sustain the Petitioner's 1990 guilty plea. ECF Dkt. #10, Attachment 5, Exhibit H.  Less than a

month later, Petitioner filed the instant application for writ of habeas corpus.

## II.    INSTANT FEDERAL HABEAS CORPUS PETITION

On May 27, 2005, Petitioner, *pro se*, executed a petition for writ of habeas corpus in this

Court pursuant to 28 U.S.C. §2254 which was docketed for filing on June 9, 2005.  ECF Dkt.

---

[2]Although Judge Adams anticipated a possible remedy for Petitioner resulting from the *Ankrom* decision, Petitioner has not indicated whether redress was sought in the Ohio courts or through the administrative processes of the OAPA since the marginal dismissal of his previous habeas petition.  Many of the claims Petitioner alleges in the instant petition are the same as those reviewed by Judge Adams and will not be addressed by the undersigned in this Report and Recommendation.  The undersigned will address only those errors not previously alleged and reviewed on the merits in Petitioner's previous applications for writ of habeas corpus.

-8-

#1.  On May 30, 2006 this case was referred from the Honorable Judge James S. Gwin, to the

undersigned Magistrate Judge, for preparation of this Report and Recommendation. ECF Dkt.

#8.  Petitioner raises the following grounds for relief:

> Ground One: The APA, acting as Agents of the State of Ohio and under Color of
> State Law, Breached the Judicially Sanctioned Plea Agreement.
>
> Supporting Facts: On November 10, 2003, the APA, when conducting a Parole
> Consideration hearing refused to abide by the Terms and Conditions of the
> Judicially Sanctioned Plea Agreement Contract entered into between this
> Petitioner and the State of Ohio.
>
> Ground Two: The Trial Court denied this Petitioner his Constitutional Rights
> when refusing to Withdraw the Guilty Plea.
>
> Supporting Facts: The Petitioner herein demonstrate [sic] to the Trial Court that
> the actions of the APA, acting as Agents of the State of Ohio, Breached the
> Terms and Conditions of the Judicially Sanctioned Plea Agreement Contract,
> which resulted in this Petitioner's Constitutional Rights being violated.
> However, the Court refused to Protect this Petitioner's Rights and Withdraw the
> Guilty Plea.
>
> Ground Three: The Trial Court violated this Petitioner's Constitutional Rights by
> refusing to conduct an Evidentiary Hearing.
>
> Supporting Facts: The Trial Court refused to Conduct an Evidentiary Hearing so
> that this Petitioner could call witnesses that made specific promises to this
> Petitioner that were made part of the inducement to have this Petitioner Pled [sic]
> Guilty, which means those promises must be abided by and adhered to by the
> State of Ohio.

ECF Dkt. #1 at 5-6.  On July 6, 2006, Respondent filed an answer / return of writ. ECF Dkt.

#10.  On July 28, 2006, Petitioner filed a traverse, including duplicative motions for

appointment of counsel and for an evidentiary hearing. ECF Dkts. #11, #12.

### A.   Motions for Appointment of Counsel and an Evidentiary Hearing

It is well established that federal habeas corpus petitioners have neither a Fifth nor Sixth

Amendment right to the appointment of counsel. *See Douglas v. Maxwell*, 357 F.2d 320, 321 (6th Cir. 1966).  The appointment of counsel for federal habeas petitioners who, like Petitioner, have filed pursuant to § 2254, is governed by 18 U.S.C. § 3006A. *See* 28 U.S.C. § 2254(h).  In cases where the Court determines that an evidentiary hearing is required, the appointment of counsel is mandatory. *See* Rule 8 of the Rules Governing 28 U.S.C. § 2254.  Aside from those cases, the decision to appoint counsel for a federal habeas petitioner is within the Court's discretion, and representation may be provided whenever "the interests of justice so require." 18 U.S.C. § 3006A(a)(2).

Upon review of the record, the undersigned finds an evidentiary hearing is not necessary, therefore the appointment of counsel is not mandatory.  *See* Rule 8 of the Rules Governing 28 U.S.C. § 2254.  Upon further review of the pleadings to date, the undersigned also finds that Petitioner has been able to adequately present his claims before this Court, thereby supporting the undersigned's conclusion that the interests of justice do not require the appointment of counsel.  Therefore, Petitioner's motions for the appointment of counsel and for an evidentiary hearing are hereby DENIED.

III.     **LAW AND ANALYSIS**

A.     **PROCEDURAL BARRIERS**

Petitioner filed the instant petition under 28 U.S.C. § 2254, which provides that a state prisoner is entitled to habeas relief if he is held in custody in violation of the Constitution, or

laws, or treaties of the United States.  However, a state inmate seeking federal habeas review must overcome several procedural barriers before a court will consider the merits of the federal habeas petition.  '[P]rocedural barriers, such as [the] statutes of limitations, rules concerning procedural default, and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim.'  *Daniels v. United States*, 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

In the present action, Respondent asserts that the instant federal habeas corpus petition is barred by the statute of limitations found in 28 U.S.C. § 2244(d). ECF Dkt. #10 at 9-10. Respondent notes that Petitioner's conviction (based upon the guilty plea at issue) became final on or around May of 1991, when the period for his direct appeal litigation expired.  *See e.g.*, ECF Dkt. #10 at 9-10 and Attachment D (*State v. Parsons*, 1991 Ohio App. LEXIS 1008, Case Nos. 14787, 14788 (Ct. App. 9th Dist., Summit Co. March 13, 1991)).  Based upon the conviction date, Respondent asserts that Petitioner's claim is barred by the one-year statute of limitations provided in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). ECF Dkt. #10 at 9-10.  Respondent's argument fails on two levels: first, because the Petitioner was convicted before the AEDPA was enacted, and primarily, because the factual predicate for Petitioner's claims was not otherwise discoverable until November 11, 2003.

The AEDPA contains a one-year statute of limitations that applies to petitions filed pursuant to 28 U.S.C. § 2254.  The one-year statute of limitations is found in 28 U.S.C. § 2244(d), which states:

(1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     *the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.*

28 U.S.C. § 2244(d) (emphasis added).

The United States Supreme Court has held that newly enacted statutes of limitation must allow a "reasonable time after they take effect for the commencement of suits upon existing causes of action." *Texaco, Inc. v. Short*, 454 U.S. 516, 527 n.21 (1982).  The AEDPA became effective on April 24, 1996, and if an inmate's conviction was final before that date, the inmate was afforded a one-year grace period, lasting until April 24, 1997, in which to file his federal habeas petition. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); *see also Brown v. O'Dea*, 187 F.3d 572, 577 (6th Cir.1999), *vacated on other grounds*, 530 U.S. 1257 (2000)).  Because Petitioner's conviction was final before the enactment of the AEDPA he would have been afforded a grace period, lasting until April 24, 1997, with which to petition for writ of habeas corpus had he challenged the legality of his underlying conviction or incarceration.  Therefore, Respondent's assertion that Petitioner was required to apply for a writ a habeas corpus sometime in 1991 is without merit.

Primarily, Respondent's argument that Petitioner's application is untimely based upon the date of his conviction fails because the factual predicate of Petitioner's claims could not

have been discovered prior to Petitioner's initial appearance with the OAPA on November 11, 2003. *See e.g.*, 28 U.S.C. § 2244(d)(1)(D). Petitioner's allegations consist of error by the OAPA in denying him parole at his first parole eligibility hearing, which in turn establishes the predicate for Petitioner's allegation that his plea agreement has been breached. As long as the habeas petition was filed within one-year from the date on which discovery of the factual predicate of the claim was made, or should have been made by a duly diligent person, then it is timely. *Dicenzi v. Rose*, 419 F.3d 493, 498-99 (6th Cir. 2005). This is a fact specific inquiry and the burden falls on the party asserting that the limitations period has expired. *Id.* Respondent has failed to address this issue, and subsequently failed to meet this burden. Thus, Petitioner's application for writ of habeas corpus is timely and there appear to be no procedural bars, or allegations of further procedural barriers, which would affect the review of the instant petition.

### B. <u>MERITS REVIEW</u>

A state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution, laws or treaties of the United States." 28 U.S.C. § 2254. To say that a petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). In other words, a habeas court will not review alleged errors based solely upon state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). In addition, the undersigned notes that federal habeas courts are obliged to "accept a state court's interpretation of that state's statutes and rules of practice." *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). Similarly, a federal court is not free to ignore the pronouncement of a state appellate court on matters of state law. *Central*

*States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).

Further, "a determination of a factual issue made by a state court shall be presumed correct" and

the Petitioner has the burden of rebutting this presumption of correctness by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1).

> In reviewing the merits of a federal habeas corpus petition, the AEDPA provides that:
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the Supreme
>> Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of
>> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law 'if the state court

arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law

or if the state court decides a case differently than the U.S. Supreme Court has on a set of

materially indistinguishable facts.' *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  In

contrast, the Supreme Court held that a state court adjudication involves an "unreasonable

application" of clearly established federal law if "the state court identifies the correct legal

principle from this Court's decision but unreasonably applies that principle to the facts of the

prisoner's case." *Id.*  With respect to its "unreasonable application" holding, the Supreme Court

emphasized that a federal habeas court may not issue the writ "simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly

-14-

established federal law erroneously or incorrectly." *Id.* at 410.  Rather, a federal habeas court may issue the writ only if the state court's application of clearly established federal law was objectively unreasonable. *Id.*; *Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

> **(1) In his first Ground for Relief, Petitioner alleges that, "The APA, acting as Agents of the State of Ohio and under Color of State Law, Breached the Judicially Sanctioned Plea Agreement."**

Petitioner repeats the following allegations against the OAPA in this successive application for habeas review: (1) the OAPA improperly and retroactively applied parole guidelines and administrative regulations in denying Petitioner parole (Ex Post Facto challenge), (2) the OAPA improperly placed him in an offense "Category 13" and improperly gave him a continuance (before another parole eligibility hearing will be had) of more than 5 years, which Petitioner alleges results in a Double Jeopardy violation and subjects him to an increased period of incarceration, (3) the OAPA miscalculated Petitioner's good time credits, and (4) the OAPA denied Petitioner a release on parole. *See e.g.*, ECF Dkt. #1 (Petitioner's Brief in Support) and *Parsons v. Ohio Adult Parole Authority*, U.S. District Court, Northern District of Ohio Case No. 5:04CV2531.  These claims were incorporated into Petitioner's last application for writ of habeas corpus (essentially asking this Court to "order the OAPA to conduct a fair, equitable, meaningful, legal, and proper parole hearing," *see e.g.*, ECF Dkt. #1 in *Parsons v. Ohio Adult Parole Authority*, U.S. District Court, Northern District of Ohio Case No. 5:04CV2531).  To the extent that Petitioner still challenges the  OAPA's discretionary decision to deny him parole, or the OAPA's denial of a "meaningful parole hearing," Petitioner's claims are non-cognizable in habeas review.

Parsons is essentially claiming the OAPA misapplied Ohio law.  Alleged violations of state law are not cognizable under 28 U.S.C. §2254 unless the violations rise for some

-15-

other reason to the level of the denial of rights protected by the Constitution.  State created administrative parole procedures do not create federal due process rights in having those procedures followed.

*Parsons v. Ohio Adult Parole Authority*, District Court, Northern District of Ohio Case No.

5:04CV2531 at 7 (internal citations omitted).

### (a) Petitioner alleges violations of his Due Process rights.

 "[W]ell-settled Supreme Court jurisprudence hold[s] that (1) there is no constitutional right to parole; (2) in the absence of state legislation mandating parole in specific instances, inmates have no right to procedural due process; (3) a constitutionally significant change of status with regard to liberty occurs only upon actual release from custody; and (4) the Ohio parole system is purely discretionary."

*Bell v. Anderson*, 2006 U.S. Dist. LEXIS at *17 - 18, Case No. 1:05CV2415 (N.D. Ohio 2006) (citing see *Jago v. Van Curen*, 454 U.S. 14, 14-21 (1981); *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 9-12 (1979).

Petitioner generally alleges Due Process violations under the Fifth and Fourteenth

Amendments of the U.S. Constitution.  Procedural due process requirements only apply to

deprivation of interests in liberty and property. *Michael v. Ghee*, 411 F. Supp.2d 813, 817 (N.D.

Ohio 2006) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)).  Petitioner has no

cognizable claim in procedural due process because incarcerated individuals have no inherent

constitutional right, or liberty interest, to parole. *Greenholtz v. Inmates of Nebraska Penal &*

*Correctional Complex*, 442 U.S. 1, 7 (1979).  Although Ohio has established a parole system,

it had no duty to do so and the presence of the parole system by itself, does not give rise to a

constitutionally-protected liberty interest in parole release. *See Id.*; *Bd. of Pardons v. Allen*, 482

U.S. 369, 373 (1987); *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Authority*, 929

F.2d 233, 235 (6th Cir. 1991).

 [W]ith regard to substantive due process, '[e]ven if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole

-16-

system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.'" (citing *Block v. Potter*, 631 F.2d 133, 136 (3d Cir. 1980)). Likewise, [s]ubstantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest.

*Bell v. Anderson*, 2006 U.S. Dist. LEXIS at * 12-13..

Therefore, without alleging arbitrariness, or showing evidence of a constitutionally impermissible basis for denying parole, Petitioner cannot challenge state parole procedures under either substantive or procedural due process. *Id.* at n.4 citing *Greenholtz*, 442 U.S. at 6, *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997); *Jones v. Georgia State Bd. of Pardons and Paroles*, 59 F.3d 1145, 1150 (11th Cir. 1995). Petitioner only supports his Due Process claim with the allegations used in his last petition for writ of habeas corpus, *i.e.*, that the OAPA placed him in the wrong offense category, retroactively applied the revised guidelines to his case, and denied him parole at his initial parole eligibility interview. These allegations do not rise to the level of arbitrariness, nor do they support an inference of the use of impermissible factors in denying Petitioner's parole. or of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

**(b) Petitioner alleges Equal Protection violations.**

Petitioner also generally alleges an Equal Protection violation. The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying, to any person within its jurisdiction, the equal protection of the laws. U.S. CONST., amend. XIV. This essentially is a direction that all persons similarly situated should be treated alike. Petitioner's Equal Protection challenge fails on the merits because Petitioner has not provided specific factual

-17-

allegations that directly support an equal protection violation. *See e.g.*, *Lillard v. Shelby County Bd. of Education*, 76 F.3d 716, 726 (6th Cir. 1996).  An equal protection claim, which is not supported by factual allegations, may be dismissed as being only conclusory. *Id.*

      **(c) Petitioner alleges Ex Post Facto law violations.**

      The Constitution prohibits states from imposing Ex Post Facto laws – laws which apply to an event occurring before the law's enactment and which disadvantage an offender by creating a significant risk of increasing the punishment for the particular crime after its commission. U.S. CONST. art. I, § 10, cl. 1; *Garner v. Jones*, 529 U.S. 244, 249 (2000) (internal citations omitted).  Retroactive application of parole provisions may fall within the ex post facto prohibition if such an application creates a sufficient risk of increasing the measure of punishment attached to the covered crimes. *Garner v. Jones*, 529 U.S. at 250 (2000). Petitioner's Ex Post Facto allegations fail on the merits because Ohio and federal courts have clearly established that the Ohio parole regulations are not "laws" for purposes of an Ex Post Facto challenge, and that the regulations do not result in increased punishment or lengthier incarceration. *Michael v. Ghee*, 411 F. Supp. 2d at 819-821 (interpreting Ohio's revised parole regulations / guidelines, held that "retroactive use of parole guidelines challenged here does not show a significant risk of increased punishment") (citing *Kilbane v. Kinkela*, 24 Fed Appx. 243 (6th Cir. 2001) and citing Ohio authority for the same proposition).  "Even if, however, the guidelines were laws for Ex Post Facto Clause purposes, the plaintiff's claim would still fail because the Constitution does not impose a per se ban on laws that retroactively apply changes to parole procedures." *Id.*

**(d) Petitioner alleges a Double Jeopardy violation.**

The Double Jeopardy Clause of the Fifth Amendment prohibits states from placing persons twice in jeopardy of their liberty for the same criminal offense (i.e., prohibits multiple punishments for the same crime). U.S. CONST., amend. V.   Petitioner's Double Jeopardy claim fails on the merits as the denial of parole in neither the imposition nor the increase of a sentence. *Mayrides v. Chaudhry*, 43 Fed. Appx. 743, 745 (6th Cir. 2002).  In denying Petitioner's parole the OAPA did not in any way extend his incarceration beyond the life sentence he is already serving.

> 'Further, in [Ohio], parole is a matter of grace.  It may be denied for any reason (except, of course, an unlawful one such as race), or for no reason.  And where, as here, the length of the reconsideration period is entrusted to the discretion of the same body that has discretion over the ultimate parole determination, any risk engendered by changes to the length of that period is merely part of the uncertainty which [is] inherent in the discretionary parole system, and to which [Petitioner] subjected himself when he committed his crime.'

*Garner v. Jones* at 258-259 (Scalia, J., concurring)

**(e) Petitioner alleges a violation of the Separation of Powers doctrine.**

Finally, under the reasoning in *Ankrom v. Hageman*, 2005 Ohio App. LEXIS 1480 at ¶¶30-34, the determination that the OAPA is "usurping judicial sentencing authority" refers to a 'violation of the separation of powers doctrine which relates to the relationship between the branches of Ohio's government...any alleged violation concerns only state law.' *See e.g., Michael v. Ghee*, 411 F. Supp. 2d at 823.  As indicated in Judge Adams' amended order of dismissal in *Parsons v. Ohio Adult Parole Authority*, U.S. District Court, Northern District of Ohio Case No. 5:04CV2531, Petitioner should seek administrative remedy through the OAPA or in the Ohio courts, as the *Ankrom* decision may constitute an intervening change in Ohio law.

-19-

May 10, 2005 Order, Honorable Judge John R. Adams, U.S. District Court, Northern District of Ohio, Case No. 5:04CV2531 at 2.

Also, to the extent that Petitioner maintains claims against the OAPA that would not result in rendering his conviction or sentence invalid, but would result only in a new parole eligibility hearing where the OAPA is required to comply with Ohio law, Petitioner's has a remedy through 42 U.S.C. § 1983 (which Petitioner already has pending in the United States District Court, Southern District of Ohio), based upon the same factual predicate as alleged here. *See e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74.  Petitioner has already appropriately asserted his claims in his Section 1983 action, by omitting his request for immediate release from confinement and in seeking only a new parole hearing and / or declaratory and injunctive relief preventing the OAPA from violating his rights in the future.

> **(2), (3) Petitioner's Second and Third Grounds for Relief allege that, "The Trial Court denied Petitioner his Constitutional rights when refusing to Withdraw the Guilty Plea" and "by refusing to conduct an Evidentiary Hearing"**

Clearly established federal law recognizes that guilty pleas may be voidable in certain circumstances and that, in order to be valid, the plea must have been made knowingly, intelligently, and voluntarily. *Bradshaw v. Stumpf*, 545 U.S. 175, 182-83 (2005) (citing *Brady v. United States*, 397 U.S. 742 (1970)).  '[T]he basis for an outright vacation of the plea is an "outraged sense of fairness" for a breach relating to sentencing.' *Santobello v. New York*, 404 U.S. 257, 266 (1971) (Douglas, J., concurring).  When a Petitioner's plea colloquy transcripts comport with the requirements of constitutional due process the Petitioner must demonstrate "extraordinary circumstances" that explain the Petitioner's failure to reveal the alleged additional terms of the plea agreement. *See e.g., Ramos v. Rogers*, 170 F.3d 560, 564 (6th Cir.

1999); *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986).  Therefore, the first task is to determine whether there was a state-law error, and if that error  "so deprived [Petitioner] of due process as to provide a basis for federal habeas relief." *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001).  This necessarily requires a review of the merits of Petitioner's claims. *Id.*

In Ohio, a defendant does not have an absolute right to withdraw his guilty plea post-sentencing; in order to do so, the defendant must demonstrate manifest injustice. *State v. Parsons*, Case No. 22200 at ¶8 (Ct. App. 9th Dist. Summit Co., January 26, 2005) (citing *State v. Xie*, 62 Ohio St.3d 521 (Ohio 1992) and *State v. Smith*, 49 Ohio St.2d 261 (Ohio 1977)).  Guilty pleas are afforded deference and considered to be a valid waiver of rights so long as the plea was made voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf,* 545 U.S. at 183.  A showing that a plea was voluntary and intelligent "is generally made by the government's production of a transcript of state court proceedings to establish that the plea was made voluntarily." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir.2004).  A transcript of Petitioner's guilty plea was made available to and reviewed by the Ohio courts in deciding Petitioner's motion to withdraw his guilty pleas. *See e.g., State v. Parsons*, Case No. 22200 (Ct. App. 9th District January 26, 2005).

Although '[a] defendant's acknowledgment that "no promises were made" is a formidable barrier to proof from a promise that he would be [paroled] if he pleads guilty, it does not conclusively bar him from proving the existence of a promise.' *Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987).  "For [Petitioner] to contradict such a statement there must be some independent indicia of the likely merit of the Petitioner's contentions, and mere contradiction of

his statements at the guilty plea hearing will not carry this burden." *Id.*  "To obtain federal habeas relief on the basis of alleged promises [in a plea bargain], a petitioner must prove that he was promised an actual sentencing benefit by showing (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *Bond v. Dretke*, 384 F.3d 166, 168 (5ᵗʰ Cir. 2004) (citing *Daniel v. Cockrell*, 283 F.3d 697, 703 (5ᵗʰ Cir. 2002)).

Petitioner contends that, prior to pleading guilty, he was promised parole at his first parole eligibility hearing, or that he would be paroled by the time he had spent approximately 15 years in prison. ECF Dkt. #1 at 3.  Petitioner states the fact that he was not paroled at his first parole interview, and does not have the opportunity for another parole interview until 2011, results in a broken promise on which his decision to plead guilty relied. *Id.*  Through this, Petitioner claims his circumstances present manifest injustice and that the Ohio court erred in not granting him an evidentiary hearing for purposes of supporting his motion to withdraw his guilty plea. *Id.*

Ohio law provides that "[a] court may dismiss a petition alleging a coerced guilty plea and breach of a plea bargain agreement, without a hearing, where the record demonstrates that: (1) the court complied with Crim.R. 11 in accepting a voluntary guilty plea;³ (2) the petitioner is not entitled to relief; and (3) the petitioner failed to submit evidentiary documents containing sufficient operative facts to demonstrate the guilty plea was induced by false promises."  *State v. Kapper*, 5 Ohio St.3d 36, 38-39 (1983).

The transcripts at Petitioner's plea colloquy clearly indicate Crim.R. 11 was complied

---

³Ohio R. Crim. P. 11 governs a defendant's plea colloquy in Ohio courts.  For purposes of habeas review the Sixth Circuit requires the plea colloquy to conform to Fed. R. Crim. P. 11 to ensure constitutional due process (i.e., that the plea is knowing, voluntary, and intelligent and not the result of force or threats or of promises apart from the plea agreement). *See e.g., Ramos v. Rogers*, 170 F.3d at 564 n.2.

with and Petitioner has failed to provide sufficient facts or evidence to demonstrate that his guilty plea was induced by false promises or that he is entitled to relief.  Additionally, Petitioner did not submit evidentiary documents with his motion, except for his own affidavit.  The Ohio court correctly noted that there was no evidence of a promise of parole, nor indications of such promise, and that the <u>opportunity</u> for parole <u>eligibility</u> was explained to Petitioner, but no guarantees for release on parole were indicated. *See e.g., State v. Parsons*, Case No. 22200 at ¶10 (Ct. App. 9th Dist. January 26, 2005) (emphasis added).  Petitioner supported his claims only with his own self-serving affidavit, without attempting to supplement his claims with affidavits from the witnesses he alleges were also privy to his promise of parole, particularly his defense counsel and his parents. ECF Dkt. #1 at 11 (the promise by Petitioner's counsel was "made to, and witnessed by, Petitioner's father, Edward R. Parsons, and Petitioner's mother, Rae L. Parsons."); and *see e.g.*, *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("If defendant produces independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties, [he] is entitled to an evidentiary hearing.").  Petitioner also presented no evidence of a specific promise; he asserts only a vague recollection that he was promised parole sometime around, either his first statutory parole hearing, or after he served approximately fifteen years in prison. *See e.g.*, ECF Dkt. #1 at 3.

At most, Petitioner presented a "prediction" by counsel, that "if" Petitioner maintains good behavior in prison he will likely be released on parole. *Id.*  In other words, there was no unqualified guarantee of parole.  "[A] guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate <u>prediction</u> that a lesser sentence would be imposed."  *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002) (emphasis added).  A "prediction, prognosis, or statement of probabilities...does not constitute

-23-

an 'actual promise.'" *Id.* (citing *Harmason v. Smith*, 888 F.2d 1527, 1532 (5th Cir. 1989); and

see, *Self v. Blackburn*, 751 F.2d 789, 793 (5th Cir. 1985)(defense counsel's statement that parole

would be probable after 10 ½ years did not render the guilty plea involuntary because it was a

mere prediction, not a guarantee).

> [Petitioner] wants us to rely on his alleged <u>subjective</u> impression of what his plea bargain was, rather than the bargain outlined <u>in the record</u>. The record in the case indicates that [Petitioner] responded negatively (and, he wants us to believe, <u>untruthfully</u>) to a judge's inquiry as to whether any promises had been made to him in order to get him to so plead.
>
> If we were to rely on [Petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioner's such as Ramos from making the precise claim that is today before us. Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.

*Ramos v. Rogers*, 170 F.3d at 566 (emphasis in original, and citing *Baker v. United States*, 781 F.2d 85, 90).

Also, pleading guilty to a sentence of "20 years to life," with the possibility of parole, is

clear by its own terms, that the maximum amount of time Petitioner could spend in prison, is the

remainder of his natural life. *See e.g.*, ECF Dkt. #10, Attachment 2, Exhibit B (Court of

Common Pleas Journal Entry CR 90 03 0594: "It is therefore, ordered and adjudged by this

court, that the defendant, Kelly Lee Parsons, be committed to the Ohio Department of

Rehabilitation and Correction for the REMAINDER OF HIS NATURAL LIFE for punishment

of the crime of Aggravated Murder..." (emphasis in original)). The plea agreement involved

dropping the capital specification (i.e., in the instant case, adding the possibility for parole to a

life sentence, because Petitioner was not eligible to be sentenced to death based upon his age at

the time of the offense). The state's deletion of the capital specification does not result in a

guarantee of parole but it is favorable to a pleading defendant when faced with a life sentence knowing there is <u>never</u> an opportunity for release, versus, the sentence of life with the possibility for parole (i.e., the <u>possibility</u> of being released).  In any event, Petitioner received the implied benefit of the alleged promise because he received a sentence that left open the possibility of release at a later date.  *See e.g., Perkins v. Mintzes*, 1984 U.S. App. LEXIS 14426 at *8, Case No. 83-1174 (6th Cir. 1984).

The transcripts of the plea colloquy support the Ohio courts' decision and Petitioner cannot now complain that the plea bargain was other than what he openly and unequivocally declared in court. *See e.g., United States v. Pough*, 20 Fed.Appx. 345, at *5, 2001 U.S. App. LEXIS 20750 (6th Cir. 2001).

**IV**.    <u>**CONCLUSION AND RECOMMENDATION**</u>

The Ohio courts properly reviewed the transcript of the plea hearing and found no defects in the taking of Petitioner's guilty pleas.  During the plea colloquy Petitioner was asked whether any promises had been made to him and he responded in the negative, as such, he is unable to rebut the presumption of validity to that negative averment by using only his own self-serving affidavit. *See e.g., Baker v. United States*, 781 F.2d at 90 ("To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violated established contract-law standards.").

Accordingly, the undersigned recommends that this Court dismiss the instant Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 with prejudice as there was no error in the Ohio courts' interpretation and application of constitutional principals to Petitioner's motion to withdraw his guilty plea.  Additionally, the undersigned recommends that

-25-

this Court dismiss Petitioner's claims regarding the OAPA's practices and procedures as non-cognizable in habeas review.

Date:    October 26, 2006                                       _____*/s/George J. Limbert*_____
                                                                George J. Limbert
                                                                United States Magistrate Judge


        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).