UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
: 
KELLY LEE PARSONS,                           :          CASE NO. 5:05-CV-1589
: 
          Petitioner,                              : 
: 
vs.                                                    :          OPINION & ORDER
:          [Resolving Docs. No. 1, 4, 5, 11, 13]
CHRISTINE MONEY, WARDEN,           : 
: 
          Respondent.                            : 
: 
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        With this Opinion and Order, the Court considers whether to adopt the Report and

Recommendation of Magistrate Judge George J. Limbert that advises the Court to deny Petitioner's

habeas corpus application and motions for an evidentiary hearing and the appointment of counsel.

Petitioner and Respondent have objected to the Magistrate Judge's recommendations.  Pursuant to

Section 636(b)(1) of Title 28 of the United States Code, the Court reviewed those portions of the

Report and Recommendation objected to by the parties.

        Upon *de novo* review of the record and for the reasons discussed in the Magistrate Judge's

Report and Recommendation, the Court **AMENDS**, in part, the Report and Recommendation and

otherwise **ADOPTS** the findings of the Magistrate Judge.  The Court **DENIES** Petitioner's

application for writ of habeas corpus and motions for an evidentiary hearing and the appointment

of counsel.

Case No. 5:05-CV-1589
Gwin, J.

## I.  Background

This case arose out of the murder of William Simcox. [Docs. 1-3, 10-2.]  On February 22, 1990, Petitioner Kelly Lee Parsons ("Parsons") went to Simcox's home in Tallmadge, Ohio with Daniel Burns and Ted Patterson.  *Id.*  Within one hour of the trio's arrival, Simcox had been fatally stabbed sixteen times and his home robbed of approximately $30,000 in cash.  *Id.*

The Summit County Grand Jury charged Parsons with one count of aggravated murder, which included a death penalty specification, and one count of aggravated robbery. [Doc. 1-3 at 2.] On August 24, 1990, Parsons pleaded guilty after plea negotiations with the Summit County Prosecutor.  *See, e.g.*, Doc. 1-3 at 26-38.  The trial court accepted Parsons's guilty pleas and sentenced him to concurrent terms of life imprisonment for aggravated murder and ten to twenty-five years for aggravated robbery.  [Doc. 1-3 at 20-21.]

After Parsons's incarceration, the Ohio Adult Parole Authority ("OAPA") and Ohio Administrative Parole Unit ("OAPU") implemented the State's "Revised Parole Eligibility Guidelines." [Doc. 1-3 at 4.]  The OAPA and OAPU applied these guidelines to Parsons when he appeared for a parole hearing on November 10, 2003.  *Id.*  After Parsons's hearing, the OAPA denied him parole and informed him that he would not become eligible for parole until he had served the equivalent of 300 months of confinement. [Doc. 1-3 at 22-25.]  The OAPA continued Parsons's imprisonment until at least November 2011.  *Id.*

On March 29, 2004, Parsons moved the Summit County Court to withdraw his August 1990 guilty pleas, alleging that the OAPA breached a "judicially sanctioned plea agreement" that guaranteed him release from prison after the November 2003 parole hearing. [Doc. 1-3 at 4.]  As discussed below, as his case moved through the Ohio state court system, Parsons also filed petitions

-2-

Case No. 5:05-CV-1589
Gwin, J.

for writ of habeas corpus in the Northern and Southern Districts of Ohio. This Opinion and Order

concerns the fourth habeas petition filed by Parsons.

*A. Parsons's Plea Colloquy, Sentencing, Initial Appeal, and Denial of Parole*

On August 24, 1990, Parsons pleaded guilty in the Summit County Court of Common Pleas

to aggravated murder and aggravated robbery. [Doc. 10.] Participants in the plea colloquy included

Assistant Summit County Prosecutor Michael E. Carroll ("Carroll") and Parsons's attorneys, Irving

B. Sugerman ("Sugerman") and George Pappas ("Pappas"). After the commencement of the

colloquy, Prosecutor Carroll characterized the nature of the preceding plea negotiations:

> Mr. Carroll: Your Honor, this is Case Number 90-03-594, this is defendant C, it's
> Kelley [sic] Lee Parsons. He is present, he is represented by Attorney [sic]
> Sugerman and Pappas. He is charged by indictment with one count of murder. That
> count contains a specification for imposition of death or imprisonment for a capital
> offense, and he is charged in count two of the indictment with one count of
> aggravated robbery. . . . Pursuant to our discussions and Rule 11(F) [of the Ohio
> Rules of Criminal Procedure], we have entered into this plea negotiation. It's my
> understanding this morning that Mr. Parsons is going to withdraw his plea of not
> guilty to count one of the indictment, which is aggravated murder, and to count two
> of the indictment, which is aggravated robbery. To those counts he is going to enter
> pleas of guilty this morning. If those pleas are entered, Your Honor, the state is
> going to recommend that the specification to count one be dismissed. The state is
> going to further recommend that as to count one Mr. Parsons be sentenced to the
> only sentence available to this court, that being life imprisonment; that as to count
> two Mr. Parsons be sentenced to a minimum of 10, to a maximum of 25 years. The
> state is going to further recommend that those sentences run concurrently and not
> consecutively.
>
> The plea negotiations we have discussed, Your Honor, is [sic] conditioned upon Mr.
> Parsons testifying truthfully in the cases of the co-defendants in this matter . . . I
> believe that is the sum and substance of the plea negotiations in this case, Your
> Honor.
>
> The Court: Mr. Parsons, do you understand the nature of these proceedings?
>
> The Defendant [Parsons]: Yes, sir.
>
> The Court: Do you understand the nature of the offenses for which you are indicted?

-3-

Case No. 5:05-CV-1589
Gwin, J.

The Defendant [Parsons]: Yes, sir.

The Court: First of all, we will review those.  You were actually indicted for aggravated murder with a specification whereby it becomes a capital crime because of that specification.  You in fact could under some circumstances be sentenced to death or you could be confined in prison for life with no parole for less than 30 years. Since you were 17 years old at the time of the offense, you cannot under the laws of the State of Ohio be subjected to the death penalty.

With respect to the aggravated robbery charge, you could be confined in prison for a minimum of 5 to 10 years and a maximum of 25 years, so that the aggregate worst sentence you could in fact receive or the most confinement would be life imprisonment with no parole after 30 years and you could have had consecutively a sentence on top of that for the aggravated robbery of a minimum of 10 and a maximum of 25 years.  If you were in fact sentenced to the maximum after a trial, it would be my opinion that there would be no parole for less than 36 years.

Is that about right, Mr. Carroll?

Mr. Carroll: Yes, Your Honor.

The Court: Under the plea bargain, the prosecutor recommends you would in fact be pleading guilty to aggravated murder with the specification making it a capital offense would be dropped so you could in fact be sentenced to life imprisonment but you could be paroled after 20 years.

Now, under the plea bargain also, the aggravated robbery charge would have a sentence of a minimum of 10 and a maximum of 25 years; however, the prosecutor recommends that the sentence be run concurrently.  *It's possible then that you could be eligible for parole in, what, about 15 years*?

Mr. Carroll: The statute says eligibility is after 20 years, he is entitled to credit for good time if he earns it while he is serving his sentence.

The Court: So you know the difference between the penalty you could be subjected to after trial and that under the plea, you understand that?

The Defendant [Parsons]: Yes, sir.

The Court: And there is a substantial benefit to you of time off under this plea, do you understand that?

The Defendant [Parsons]: Yes, sir.

Case No. 5:05-CV-1589
Gwin, J.

The Court: Do you also understand if you enter your plea of guilty you are waiving your right to trial by jury or the court?

The Defendant [Parsons]: Yes, sir.

The Court: At such a trial you cannot be compelled to testify against yourself.

The Defendant [Parsons]: Yes, sir.

The Court: You are waiving the right to confront your accusers or witnesses who will testify against you.

The Defendant [Parsons]: Yes, sir.

The Court: And you are waiving the right to subpoena witnesses on your own behalf.

The Defendant [Parsons]: Yes, sir.

The Court: You are waiving the right that requires the state to prove you guilty beyond a reasonable doubt.

The Defendant [Parsons]: Yes, sir.

The Court: As well as the right not to incriminate yourself.

The Defendant [Parsons]: Yes, sir.

The Court: Other than the recommendations of the prosecutor in open court, has anyone promised you anything, coerced you or threatened you in any manner to get you to plead guilty?

The Defendant [Parsons]: No, sir.

The Court: Did you in fact commit the crime of aggravated murder that you are pleading guilty to?

The Defendant [Parsons]: No, sir.

The Court: What's that?

The Defendant [Parsons]: No.

The Court: I cannot accept your plea.  We will have a trial date on this case.

-5-

Case No. 5:05-CV-1589
Gwin, J.

> The Defendant [Parsons]: I am pleading guilty, okay.
>
> The Court: You are not pleading guilty to any offense that you did not commit in my court.  You either did it or you don't plead.
>
> The Defendant: I would like to enter a plea of guilty, sir.
>
> The Court: I will not accept your plea of guilty unless you in fact committed the crime you are pleading guilty to.
>
> Mr. Carroll: If [defense counsel] could have a moment to talk to [Defendant Parsons].

[Doc. 1-3 at 27-32.] (Emphasis added.)

At this point, the Summit County Court recessed Parsons's plea colloquy and Parsons spoke privately with Sugerman and Pappas.  [Doc. 1-3 at 32.]  After a brief recess, the court reconvened and Parsons's attorney described his conversation with his client to the court:

> Mr. Sugerman: Your Honor, there's a couple of things that I would like to bring to the court's attention.  Mr. Pappas and I on numerous occasions have discussed with Mr. Parsons the entering of this plea or these pleas of guilty today.  We had the opportunity to discuss the matter again with him this morning and just now in the brief recess that we had.  I think that he understands the evidence that would be presented in this particular case if it were to go to trial.  I believe that he understands that it is his desire to enter a plea of guilty to both of those charges here today.
>
> Prior to doing so, there were a number, couple of other things that we discussed in chambers.  It was our recommendation, our desire to enter a plea of no contest today in chambers.  The state objected to that.  The court refused to accept a plea of no contest in this matter.
>
> We have also explained that to Mr. Parsons.  We would place our objection to that on the record and preserve it for appeal.
>
> We would also renew all prior motions not only in this court and in the Juvenile Court to protect the record.  It's my further understanding that the state will take no position on parole in this matter either for or against an early parole in this matter either for or against an early parole pursuant to the good time reductions that he is eligible for.
>
> It's also my understanding that the court will order that he receive credit for the time

-6-

Case No. 5:05-CV-1589
Gwin, J.

> that he has served since the date of his arrest which, I believe was March 21, 1990 and we would also ask the court to recommend in its order if in fact [Parsons's two co-defendants] are convicted of these crimes . . . that Mr. Parsons be incarcerated in a separate facility from those two gentlemen.
>
> Pursuant to discussions that Mr. Pappas and I just had with [Parsons], it is my understanding he does wish to withdraw his former pleas of not guilty and not guilty by reason of insanity and enter pleas here this morning.
>
> The Court: All right.  Before we separated a few minutes ago, I asked you specifically if you committed the crime that you are pleading guilty to, that would include, of course, the aggravated murder and the aggravated robbery.  Did you?
>
> The Defendant [Parsons]: I am guilty of aiding and abetting and taking [my co-defendants to the crime scene] so, yes, I am guilty, sir.
>
> The Court: You are saying you are guilty as an aider and abettor?
>
> The Defendant [Parsons]: Yes, sir.

[Doc. 1-3 at 32-34.]

The trial judge then recounted Parsons's statement to the police made at the time of his arrest in which Parsons described his participation in the crimes charged, including stabbing the victim. [Doc. 1-3 at 34-35.]  Parsons confirmed the truth of his police statement.  *Id.*  Parsons's plea colloquy continued:

> The Court: Based on having read [Parsons's statement to the police] and your admissions in there, I will accept your plea of guilty.  Now, do you have anything to say as to why the Court should not pass sentence upon you?
>
> The Defendant [Parsons]: No, sir.
>
> The Court: All right.  With respect to the crime of aggravated murder – do you gentlemen want to say anything, counsel, at this time?  Anything else?
>
> Mr. Sugerman: No, Your Honor.
>
> The Court: With respect to the crime of aggravated murder as charged in this case, the court will sentence you to confinement in the Ohio State Penal System for the rest of your natural life, and with respect to the crime of aggravated robbery, the

-7-

Case No. 5:05-CV-1589
Gwin, J.

> court will sentence you to confinement in the Ohio State Penal System for a
> minimum of 10 and a maximum of 25 years.  Both sentences are to run concurrently
> and not consecutively.
>
> Is there anything else at this time?
>
> Mr. Carroll: Two things, Your Honor.  As to where Mr. Parsons might serve this
> sentence, I will contact [the penal system representative] who is in charge of
> classifications and things of that nature, explain to him when the other [litigation
> concerning Parsons's co-defendants] are finished, if there are convictions, Mr.
> Parsons's cooperation with the State of Ohio and make the request that he not be
> incarcerated in the same facility [as his co-defendants].  In my agreement as to
> parole, I will not take a position on the parole of Mr. Parsons, although I will contact
> the Parole Board and explain to them the facts of this case, the role of each man and
> what did happen here in this crime.
>
> The Court: Is there anything further for the defense?
>
> Mr. Sugerman: Just about the credit for the time served, sir.
>
> The Court: [Parsons] will be given credit for time served by order of this court from
> March 21, 1990, the date of his arrest, and that is to appear in the journal entry.
>
> Mr. Sugerman: Thank you, sir.
>
> The Court: Anything else?
>
> Mr. Carroll: Not from the state, no, Your Honor.
>
> The Court: Court is adjourned.

[Doc. 1-3 at 34-37.]

On August 27, 1990, the Summit County Court journalized Parsons's guilty pleas and

sentenced him to concurrent terms of life imprisonment for aggravated murder and ten to twenty-

five years of imprisonment for aggravated robbery. [Doc. 1-3 at 20-21.]  Parsons's journal entry

contains no reference to parole.  *Id.*

Parsons appealed to the Court of Appeals for the Ninth Judicial District. [Doc. 10-2 at

20-23.]  In his appeal, Parsons challenged the constitutionality of Ohio laws regarding the bind-

Case No. 5:05-CV-1589
Gwin, J.

over proceedings in juvenile court that allowed him to be tried as an adult. *Id.* Parsons did not

seek to withdraw his guilty pleas in his appeal. *Id.* On March 13, 1991, the appellate court

affirmed the trial court's judgment and denied Parsons's appeal. *Id.*

On November 11, 2003, Parsons received a parole hearing at which the OAPA denied him

parole. [Doc. 1-3 at 22-25.] The OAPA noted that Parsons had served 164 months of his guideline

range 300 months to life, granted him forty months of credit for participating in prison programs,

and scheduled his next parole hearing for November 2011. *Id.* at 23. In the "Rationale of Decision

within Aggregate Guideline" section of its Decision Sheet, the OAPA said that it would not grant

Parsons parole "due to the unusually aggravated nature of the offense." *Id.* The OAPA concluded

that it did "not believe [Parsons] is suitable for release at this time." *Id.*

### B.  Parsons's State Court Litigation

On March 29, 2004, following the OAPA's denial of his parole, Parsons moved the Summit

County Court of Common Pleas to withdraw his August 1990 guilty pleas. *See* Doc. 1-3 at 2-6.

Generally, Parsons said that the sentencing court and his lawyers promised him that his incarceration

would not exceed fifteen years. *Id.* Parsons asserted that, but-for these promises, he would not have

entered his August 1990 guilty pleas. *Id.*

On June 25, 2004, the Summit County Court denied Parsons's motion and noted that "a

review of the Plea and Sentencing indicates that there was no promise made to Defendant by the

Court or other entity that he would be released on parole at any specific time at all." *Id.* at 5. After

reviewing, *inter alia*, Parsons's plea colloquy and sentencing journal entries, the trial court found:

> there was no record of agreement with the State that [Parsons] would serve only the
> minimum sentence. In fact, in the instant case, the record is clear that the Court
> informed [Parsons] merely that he could be eligible for parole in twenty years. In
> addition, our record is clear that the State further agreed not to take any position in

-9-

Case No. 5:05-CV-1589
Gwin, J.

> regard to [Parsons's] parole.  On the other hand, there is no indication in the record
> that the State, defense counsel, or the Court assured [Parsons] that he would be
> released on parole at any time. [Parsons] further asserted on the record that, other
> than the recommendations of the prosecutor in open court, no one promised
> [Parsons] anything to get him to plead guilty.
>
> Upon review, the Court finds that [Parsons] has not established the existence of
> manifest injustice.  A review of the transcripts of Plea and Sentencing indicates that
> there was no promise made to [Parsons] by the Court or other entity that he would
> be released on parole at any specific time at all.

*Id.* at 6 (internal citation omitted).

Parsons appealed. [Doc. 1-3 at 7.]  On January 26, 2005, the Court of Appeals of the Ninth

Judicial District affirmed the Summit County Court's denial of Parsons's motion to withdraw his

guilty pleas. *Id.* at 12.  The appellate court found that "[a] review of the sentencing transcript indeed

shows that [Parsons] was neither promised a specific release date, nor was he told that he was

definitely entitled to parole at a certain time."  *Id.* at 11.  The Court of Appeals found:

> In denying [Parsons's] motion, the trial court noted that "the record is clear that the
> Court informed [Parsons] merely that he *could* be eligible for parole in twenty
> years."  Further, the court stated that "[a] review of the transcripts of Plea and
> Sentencing indicates that there was no promise made to [Parsons] by the Court or
> other entity that he would be released on parole at any specific time or at all."  Based
> on the above findings, the trial court determined that [Parsons] had not established
> the existence of manifest injustice, and denied his motion to withdraw his guilty plea.
> . . . Contrary to [Parsons's] assertions, the imposition of new parole guidelines does
> not create a manifest injustice . . . [because t]he new parole guidelines affected the
> date that [Parsons] would be eligible for, but not entitled to, parole.

*Id.* at 10-11 (emphasis in original).

The appellate court then discussed the constitutionality of the new parole guidelines as-

applied to Parsons's case:

> The Ohio Supreme Court found that the application of new parole guidelines which
> would change a defendant's parole eligibility date does not create an ex post facto
> imposition of punishment.  *State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.*
> (1998) 81 Ohio St. 3d 267, 268.  A defendant "has no constitutional or statutory right

-10-

Case No. 5:05-CV-1589
Gwin, J.

> to parole, he [also] has no similar right to earlier consideration of parole." . . . "[A]
> convicted person has no constitutional right to be conditionally released prior to the
> expiration of a valid sentence ." *Velasquez v. Ghee* (1996), 108 Ohio App. 3d 409,
> 411, citing *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex* (1979), 442
> U.S. 1, 7 . . . A decision to grant parole is discretionary, thus "a prisoner who is
> denied parole is not deprived of liberty." *Velasquez*, 108 Ohio App. 3d at 411.

*Id.* at 11-12 (citation format as in original).

Parsons appealed the Court of Appeals' decision. [Doc. 1-3 at 14.]  On May 11, 2005, the

Ohio Supreme Court declined jurisdiction to hear the case and dismissed Parsons's appeal "as not

involving any substantial constitutional question." *Id.*

### C. Parsons's Federal Habeas Corpus Petitions

Since 2002, Parsons has filed four petitions for writ of habeas corpus in the Southern and

Northern Districts of Ohio.  United States District Judge Edmund A. Sargus, Jr. dismissed Parsons's

first habeas petition as unexhausted.  *See Parsons v. Wilkinson*, Case No. C-2-02-405 (S.D. Ohio

June 21, 2004).  United States District Judge John R. Adams likewise dismissed Parsons's second

habeas petition as unexhausted.  *See Parsons v. Ohio Adult Parole Auth.*, Case No. 5:04-CV-0662

(N.D. Ohio June 8, 2004).  Judge Adams also considered Parsons's third habeas petition, which he

denied on the merits.  *See Parsons v. Ohio Adult Parole Auth.*, Case No. 5:04-CV-2531 (N.D. Ohio

Mar. 30, 2005).

On June 9, 2005, Parsons filed his fourth petition for writ of habeas corpus and moved the

Court for the appointment of counsel and an evidentiary hearing. [Docs. 1, 4, 5, 11.]  In the instant

petition, Parsons claims three grounds for relief: (i) that the OAPA breached his "judicially

sanctioned plea agreement" when it refused to grant him parole in November 2003; (ii) that the

Summit County Court of Common Pleas violated his constitutional rights by refusing to withdraw

his guilty plea in June 2004; and, (iii) that the Summit County Court violated his constitutional

-11-

Case No. 5:05-CV-1589
Gwin, J.

rights by refusing to conduct an evidentiary hearing prior to denying his motion to withdraw his

guilty plea. [Doc. 1-2 at 3, 16, 23.]  At the time he filed his petition for writ of habeas corpus,

Parsons also moved the Court for the appointment of counsel and an evidentiary hearing. [Docs. 4,

5.]

On July 6, 2006, Respondent Christine Money ("Money") filed a return of writ. [Doc. 10.]

On July 28, 2006, Parsons filed a traverse and duplicative motions for an evidentiary hearing and

the appointment of counsel. [Docs. 11, 12.]

The Court referred Parsons's petition for writ of habeas corpus and motions for the

appointment of counsel and an evidentiary hearing to Magistrate Judge Limbert for the preparation

of a Report and Recommendation. [Doc. 8.]  On October 26, 2006, Magistrate Judge Limbert

recommended that the Court deny Parsons's petition "because the claims are non-cognizable in

habeas review and / or otherwise fail on their merits." [Doc. 13 at 2.]  On November 3, 2006,

Respondent Money took issue with the statute of limitations discussion contained in the Report and

Recommendation, but did not object to the Magistrate Judge's overall recommendation. [Doc. 14

at 1.] On November 13, 2006, Parsons objected to the entirety of the Magistrate Judge's Report and

Recommendations. [Doc. 15.]

In this Opinion and Order, the Court first considers the objections of Money and Parsons to

the Magistrate Judge's recommendation to deny Parsons's petition for writ of habeas corpus.  The

Court then considers Parsons's motions for an evidentiary hearing and the appointment of counsel.

-12-

Case No. 5:05-CV-1589
Gwin, J.

## II.  Legal Standard

The Federal Magistrates Act requires a district court to conduct a *de novo* review of those portions of a Report and Recommendation to which an objection has been made.  28 U.S.C. § 636(b)(1).  Parties must file any objections with the Clerk of Court within ten days of the report's issuance.  *Id.*  Parties waive their right to appeal the Magistrate Judge's recommendation if they fail to object within the time allotted.  *See Thomas v. Arn*, 474 U.S. 140, 145 (1985).

Under Section 2254 of Title 28 of the United States Code, a person in custody pursuant to a state court judgment may challenge his or her conviction and sentence in federal court by applying for a writ of habeas corpus.  28 U.S.C. § 2254(a).  Federal courts may entertain an application for a writ of habeas corpus only on the ground that the prisoner's confinement violates "the Constitution or laws or treaties of the United States."  *Id.*  A federal court may grant relief for a state's violation of federal law only in circumstances that create a "fundamental defect which inherently results in a complete miscarriage of justice" or are inconsistent with "rudimentary demands of fair procedure."  *Hill v. United States*, 368 U.S. 424, 428 (1962).

Violations of state law are not cognizable in a Section 2254 proceeding unless such violations are of constitutional magnitude.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  Further, federal courts presume the correctness of a state court's determination of factual issues.  28 U.S.C. § 2254(e)(1).  A petitioner must rebut a state court's factual findings by clear and convincing evidence.  *Id.*

A habeas petitioner has a limited right to legal assistance.  The Fifth and Sixth Amendment rights to counsel do not apply to habeas corpus proceedings.  *See Pennsylvania v. Finley*, 481 U.S.

-13-

Case No. 5:05-CV-1589
Gwin, J.

551, 555-56 (1987); *Douglas v. Maxwell*, 357 F.2d 320, 321 (6th Cir. 1966).  Instead, Section 3006A of Title 18 of the United States Code governs a court's appointment of counsel to a habeas petitioner.  28 U.S.C. § 2254(h).  If a court finds that an evidentiary hearing is required in a habeas proceeding, it must appoint counsel to the habeas petitioner.  *See* Rule 8 of the Rules Governing 28 U.S.C. § 2254.  If an evidentiary hearing is not required, a court retains discretion to appoint counsel and may do so whenever "the interests of justice so require."  18 U.S.C. § 3006A(a)(2).

Similarly, a habeas petitioner has a limited right to an evidentiary hearing.  If the petitioner "has failed to develop the factual basis of a claim in State court proceedings," a federal district court may hold an evidentiary hearing only if the petitioner has shown that the claim relies either on a new rule of constitutional law made retroactive on collateral review by the Supreme Court, or on a "factual predicate that could not have been previously discovered through the exercise of due diligence."  28 U.S.C. § 2254(e)(2)(A)(i), (ii).  A district court may grant a habeas petitioner an evidentiary hearing if the petitioner "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing."  *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002) (internal quotations omitted).

A petitioner must file his Section 2254 petition within one year of the final judgment on direct review.  28 U.S.C. § 2244(d)(1).  Alternatively, the habeas petitioner may timely file his or her petition at "the expiration of the time for seeking such review;" the removal of any state-imposed impediment that unconstitutionally prevented the filing of such a petition; the Supreme Court's announcement of a new, retroactively applicable constitutional right; or, the date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(A), (B), (C), (D).  To qualify under the last factor's provisions, the petitioner

-14-

Case No. 5:05-CV-1589
Gwin, J.

must file his writ of habeas corpus within one year "from the date he discovered the factual predicate

of his claim." *See Dicenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) (citation omitted).

III. Analysis

Petitioner Parsons's instant petition for writ of habeas corpus and objections to Magistrate

Limbert's Report and Recommendation fail as time-barred and on their merits.

   A. *Parsons's Instant Petition for Writ of Habeas Corpus and Objections Fail as Time-Barred*

As a threshold issue and contrary to the finding of the Magistrate Judge, the one-year statute

of limitations set forth in 28 U.S.C. § 2244(d)(1) bars Parsons's overall habeas corpus petition.  In

her November 3, 2006 objection, Respondent Money correctly notes that, in the statute of limitations

discussion in his recommendation, the Magistrate Judge relies upon *Dicenzi v. Rose*, 419 F.3d 493,

498-99 (6th Cir. 2005) ("*Dicenzi I*"), for the proposition that Respondent had the burden of setting

forth facts to show that the one-year statute of limitations had expired. [Doc. 14 at 2.]  Respondent

Money further correctly notes that the Sixth Circuit no longer follows this interpretation of 28

U.S.C. § 2244(d)(1).  *Id.*  Instead, the Sixth Circuit has amended *Dicenzi I* and adopted the opposite

position on this issue.  *See Dicenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) ("*Dicenzi II*").  In

*Dicenzi II*, the Sixth Circuit held that "the petitioner bears the burden of proving that he exercised

due diligence, in order for the statute of limitations to begin running from the date he discovered the

factual predicate of his claim."  *Id.* at 471.  As a result, the Court amends the Magistrate Judge's

Report and Recommendation to comport with the Sixth Circuit's *Dicenzi II* decision.

However, as correctly determined by the Magistrate Judge, the appropriate "factual

predicate" controlling Parsons's instant habeas claim arose with the OAPA's denial of his parole on

November 10, 2003.  *See* Doc. 13 at 11-13.  Thus, the one-year statute of limitations for Parsons's

-15-

Case No. 5:05-CV-1589
Gwin, J.

current habeas corpus claim expired on November 11, 2004.  28 U.S.C. § 2244(d)(1)(D).  Parsons

filed his "Petition for Writ of Habeas Corpus Pursuant to 28 USC §2254" in this Court on June 9,

2005.  [Doc. 1-1.]  Thus, because he filed his petition almost seven months after the expiration of

the one-year statute of limitations, the law bars the Court's consideration of Parsons's instant habeas

petition.

        In addition to his untimely filing of his instant habeas petition, Parsons filed his objections

to the Magistrate Judge's Report and Recommendation two days beyond the allowable ten-day

period.    On October 26, 2006, the Magistrate Judge issued this matter's Report and

Recommendation.  [Doc. 13.]  Consequently, the ten-day statute of limitations ran from October 27,

2006 through November 9, 2006.  *See* FED. R. CIV. P. 6(a).  Parsons did not file his objections to

Magistrate Judge Limbert's recommendation until November 13, 2006. [Doc. 15.]  As a result,

because Parsons filed his objections to Magistrate Limbert's Report and Recommendation two days

beyond the ten-day limit, Parsons waived his right to appeal any portion of the Magistrate Judge's

recommendation.  *See Arn*, 474 U.S. at 145.

        Thus, the Court concludes that both Parsons's habeas petition and his objections to

Magistrate Limbert's Report and Recommendation are time-barred.  As briefly discussed below,

even if the Court considers the substance of Parsons's present habeas petition, his claims lack merit.

        *B. Parsons's Instant Petition for Writ of Habeas Corpus and Objections Lack Merit*

        Even if Parsons had timely-filed his habeas petition and objections to the Magistrate Judge's

recommendation, his Ohio sentencing and parole allegations lack merit and his allegations of

constitutional deprivations fail.

        First, Parsons asserts that the OAPA wrongfully denied him parole under Ohio law.  He says

-16-

Case No. 5:05-CV-1589
Gwin, J.

that the OAPA's decision to deny him parole represents a "breach" of a "judicially sanctioned guilty

plea contract." [Doc. 12 at 3.] Parsons asserts that the OAPA's decision violates "State Laws and

Administrative Regulations that were in effect and made part of the "Judicially Sanctioned Guilty

Plea Contract which should have been applied to this plaintiff." *Id.* Parsons continues that "the

Judge and State Law makes it clear that this Plaintiff should have become eligible for parole under

the Plea Agreement after serving 166 months." *Id.* Parsons says that "the OAPA blatantly violated

State Law and the Judge's order by increasing Parole Eligibility from 166 months to . . . at least 300

months." *Id.* As a result, Parsons concludes that "[o]ne or all of the breaches entitle this Plaintiff

the Constitutional Right to Withdraw the Guilty Plea." *Id.*

Parsons's assertions do not present an actionable federal habeas claim. As the statute makes

clear, the Court may entertain Parsons's application for a writ of habeas corpus only on the ground

that his continued confinement violates "the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a). Rather than demonstrate such a federal violation, Parsons complains of state

law violations. In essence, Parsons asks the Court to function as an additional Ohio appellate court

in reviewing the Summit County Court's decision on the OAPA's denial of his parole. He asserts

that the OAPA failed to follow Ohio law and state administrative regulations by denying him parole.

Parsons's claim constitutes purely state law issues already heard and rejected by the Summit

County Court of Common Pleas, the Ohio Court of Appeals of the Ninth Judicial District, and the

Ohio Supreme Court. *See, e.g.*, Doc. 1-3 at 2-14. "[I]t is not the province of a federal habeas court

to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Parsons

does not demonstrate that the OAPA's decision to continue his confinement violates the Constitution

or laws or treaties of the United States. 28 U.S.C. § 2254(a). Nor do the determinations of Ohio's

-17-

Case No. 5:05-CV-1589
Gwin, J.

courts give rise to a federal constitutional question.  Consequently, Parsons's complaints against the

OAPA do not come within the scope of habeas corpus relief.  Parsons's claim fails.

Second, Parsons challenges the Summit County Court's rejection of his claim regarding the

existence of a "judicially sanctioned" plea agreement and refusal to grant him an evidentiary

hearing.  Nothing in his August 1990 plea colloquy bears-out Parsons's contention that the

sentencing judge made a "judicially sanctioned guilty plea contract" in accepting Parsons's August

1990 guilty pleas.  As the Summit County Court of Common Pleas correctly noted, "in the instant

case, the record is clear that the [sentencing] Court informed Defendant [Parsons] merely that he

could be eligible for parole in twenty years.  In addition, the record clearly reflects that the State

agreed not to take any position in regard to Parsons's parole." [Doc. 1-3 at 6.]  The Court of Appeals

affirmed the trial court's finding. [Doc. 1-3 at 12.]  The Supreme Court of Ohio declined jurisdiction

to hear the case and dismissed Parsons's appeal "as not involving any substantial constitutional

question." [Doc. 1-3 at 14.]  Thus, the Court does not find that the Ohio courts unreasonably or

erroneously rejected Parsons's attack upon the OAPA's decision to deny his motion to withdraw his

guilty plea without conducting an evidentiary hearing.

Finally, Parsons says that the OAPA unconstitutionally denied him parole.  The OAPA did

not rely on constitutionally impermissible reasons for denying Parsons's parole.  Ohio's inmates do

not have a constitutionally-protected interest in parole unless so provided by the State's parole

statue.  *See, e.g.*, *Greenholtz v. Inmates of Neb. Penal & Corr. Auth.*, 442 U.S. 1, 12 (1979).  Ohio's

parole statute provides that the OAPA may grant parole "if in its judgment there is reasonable

ground to believe . . . that paroling the prisoner would further the interests of justice and be

consistent with the welfare and security of society."  OHIO REV. C. ANN. § 2967.03.  State and

-18-

Case No. 5:05-CV-1589
Gwin, J.

federal courts recognize the OAPA's authority as discretionary.  *See, e.g.*, *Inmates of Orient Corr. Inst. v. Ohio Adult Parole Auth.*, 929 F.2d 233, 235-36 (6th Cir. 1991); *Ex rel. Seikbert v. Wilkinson*, 69 Ohio St. 3d 489 (1994).  Because Ohio's parole statute does not create a federally-protected liberty interest in parole, the OAPA has the ability to deny parole for any constitutionally-permissible reason, including the agency's conclusion that "due to the unusually aggravated nature of offense the panel does not believe the inmate is suitable for release at this time." [Doc. 1-3 at 23.] As such, Parsons's parole denial does not set forth a deprivation of constitutional dimensions.

Thus, the Court finds that Parsons's instant petition for habeas corpus and objections to the Magistrate Judge's recommendation fail as matters of statutory procedure and upon their substance.

*C. Parsons's Motions for an Evidentiary Hearing and the Appointment of Counsel*

The Court denies Parsons's motions for an evidentiary hearing and the appointment of counsel.

The Court can appropriately grant an evidentiary hearing only where the petitioner relies on a new rule of constitutional law or facts that could not have been previously discovered through due diligence.  28 U.S.C. § 2254(e)(2).  The Court's *de novo* review of the record reveals that this case presents neither circumstance.

In addition, "a habeas petitioner is generally entitled to such a hearing if he alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing."  *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002) (internal quotations omitted).  In the present matter, Parsons does not allege a factual dispute that amounts to sufficient grounds for release.  The Summit County Court held an evidentiary hearing on Parsons's "Motion to Withdraw Guilty Plea" and found that "there was no promise made to [Parsons] by the Court or

-19-

Case No. 5:05-CV-1589
Gwin, J.

other entity that he would be released on parole at any specific time at all." *See* Doc. 1-3 at 6.  The

Court of Appeals for the Ninth Judicial District affirmed this finding.  *See id.* at 9.  The appellate

court noted that Parsons had no constitutional right to parole and the imposition of new parole

guidelines by the OAPA at his parole hearing did not create "manifest injustice" warranting the

withdrawal of Parsons's guilty plea.  *Id.* at . 11-12.  The Ohio Supreme Court dismissed Parsons's

appeal of the appellate court's affirmation as "not involving any substantial constitutional question."

*Id.* at 14.

The Court presumes the correctness of Ohio's determination of the issues raised by Parsons

in his claim against the OAPA's decision to deny him parole.  *See* 28 U.S.C. § 2254(e)(1).  Parsons

neither presents a violation of Ohio law, nor demonstrates that the OAPA's decision violates his

constitutional rights.  *See Estelle*, 502 U.S. at 67-68.  Thus, Parsons does not allege sufficient

grounds for release or place relevant facts in dispute.  *Sawyer*, 299 F.3d at 610.  Further, Ohio's

courts have fully adjudicated Parsons's current issue.  *Id.*  As a result, the Court denies Parsons's

request for an evidentiary hearing.

The Court reaches the same outcome in considering Parsons's motion for the appointment

of counsel.  Parsons does not possess a Fifth or Sixth Amendment right to counsel in this habeas

corpus proceeding.  *See Finley*, 481 U.S. at 555-56.  Further, because this case does not require an

evidentiary hearing, "the interests of justice" do not require the appointment of counsel to Parsons.

*See* 18 U.S.C. § 3006A(a)(2).  Consequently, the Court denies Parsons's motion for the appointment

of counsel.

### IV. Conclusion

Upon *de novo* review of the record and for the reasons discussed in the Magistrate Judge's

Case No. 5:05-CV-1589
Gwin, J.

Report and Recommendation, the Court **AMENDS**, in part, the Report and Recommendation and otherwise **ADOPTS** the findings of the Magistrate Judge.  The Court **DENIES** Petitioner's application for writ of habeas corpus and motions for an evidentiary hearing and the appointment of counsel.

   The Court certifies, pursuant to Section 1915(a)(3) of Title 28 of the United States Code, that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253(c); FED. R. APP. P. 22(b).

   IT IS SO ORDERED.


Dated: February 26, 2007         s/    *James S. Gwin*
                   JAMES S. GWIN
                   UNITED STATES DISTRICT JUDGE